UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| JORDAN MANUFACTURING COMPANY, INC., | ) ) ) |
| Plaintiff/Counter-Defendant, | ) ) |
| v. | ) ) |
| BRITTANY DYEING & PRINTING CORP., | ) ) ) ) |
| Defendant/Counter-Plaintiff. | ) |

CAUSE NO. 4:09-CV-60 JD

## Memorandum Opinion and Order

In its New Bedford, Massachusetts, warehouse, Brittany Dyeing & Printing Corporation is holding nearly 80,000 yards of spun polyester fabric and 166 custom-made rotary printing screens that belong to Jordan Manufacturing Company. *See* DE 27 at 5; DE 33 at 2; DE 1 at 8. Brittany ended the two companies' business relationship in mid-2009, but would not return the screens and fabric unless Jordan Manufacturing paid charges for past storage and preparation. *See* DE 27 at 4; DE 33 at 2–3. Eventually, Jordan Manufacturing sued Brittany, alleging conversion, civil conversion, breach of contract, and replevin; Brittany defended its actions, claiming a lien on the fabric and screens and countersuing for breach of implied contract and unjust enrichment. *See generally* DE 1; DE 13. Jordan Manufacturing now moves for summary judgment on the first two counts. *See* DE 27 at 1. Because there are facts genuinely in dispute that could establish that Brittany has a lien against Jordan Manufacturing's property, the Court DENIES the motion.

## Background

Jordan Manufacturing is an Indiana corporation that designs and sells custom cushions and umbrellas for outdoor furniture. It began its relatively-brief relationship

with Brittany in June 2004, when the two companies entered into an agreement for fabric-printing services. *See* DE 27 at 2; DE 33 at 2. In short, Jordan Manufacturing would buy Greige (unprocessed) fabric and have it shipped directly to Brittany in Massachusetts, where it was stored until needed. *See* DE 27 at 2; DE 33 at 2. When Jordan Manufacturing placed an order, Brittany would use Jordan Manufacturing's 166 custom-engraved rotary screens to print custom patterns on the fabric and then ship the finished fabric back to Jordan Manufacturing's warehouse in Monticello, Indiana. *See* DE 27 at 3. Brittany's printing process consisted of preparing the Greige fabric for printing, printing a pattern on the prepared fabric, and finishing the fabric. *Id.* The companies agreed on printing prices, but there was no express agreement regarding storage fees, and Brittany never charged Jordan Manufacturing storage fees on the fabric that it printed and shipped out. *Id.* at 3–4.

By December 2007, Brittany had 78,027 yards of spun polyester fabric in its warehouse in New Bedford, Massachusetts.[1] *See* DE 33 at 2. About 59,000 yards of that is Greige; Brittany prepared the other 19,000 yards for printing in anticipation of a subsequently cancelled order that Jordan Manufacturing had received from Value City Furniture. *See* DE 27 at 6; DE 33 at 2. The fabric has remained in Brittany's warehouse, and Jordan Manufacturing has not placed an order since then. *See* DE 33 at 10–11.

In June 2009, Brittany informed Jordan Manufacturing that it was getting out of the commission pigment print business and planning to focus exclusively on supplying printed camouflage fabric for the military. *See* DE 27 at 4; DE 33 at 2–3. Later that

---

[1] Brittany states that "[a]t or near December 2007, Jordan purchased about 70,000 to 80,000 yards of fabric," DE 33 at 2, but its two invoices indicate that it has stored approximately 20,000 yards of the fabric since August 2006. While that discrepancy would affect its counterclaims, it is not really material to Jordan Manufacturing's conversion claims, which are the sole subject of the motion at issue here.

month, Brittany sent by e-mail an invoice for $26,073, itemizing the costs to ship the fabric and screens back to Indiana, as well as (for the first time) demanding fees for the storage, handling, and preparation of the fabric. *See* DE 27 at 5; DE 33 at 3. In August, when Brittany declined a request to drop the charges, Jordan Manufacturing, by counsel, demanded either the return of its property or $111,724.30, it's estimate of the then-current value of the fabric and screens. *See* DE 27 at 5. Brittany then sent a second invoice, which increased the total sum to $35,535, and informed Jordan Manufacturing that if the balance was not paid within ten days, Brittany would attempt to liquidate the screens and fabric. *See* DE 27 at 6; DE 33 at 3. In response, Jordan Manufacturing filed this lawsuit on September 1. *See* DE 1; DE 27 at 6. Then, in October, Brittany sent Jordan Manufacturing a copy of a notice of public auction that it had published in the New Bedford Standard Times, announcing its intent to sell Jordan Manufacturing's goods to recoup what it claimed to be owed. *See* DE 27 at 6–7; DE 33 at 4. Jordan Manufacturing immediately moved for a temporary retraining order, but withdrew that motion when Brittany voluntarily cancelled the public auction. *See* DE 27 at 7–8; DE 33 at 4.

While these events are essentially undisputed, the parties do not agree on whether Brittany was entitled, by trade custom or otherwise, to charge storage and handling fees for returned fabric or to charge fees for preparation work on fabric that was never printed. Brittany claims that storage fees on Greige fabric shipped without processing are customary in the printing industry and that this has been its own invariable practice for more than 30 years. *See* DE 33 at 3–4. Currently, it charges a fee of $3.50 per month for each roll of fabric but (also "per custom and usage in the printing business") does not

charge storage fees for screens. *Id.* at 4. Brittany claims that Jordan Manufacturing should have known about this custom if it was in the fabric printing business, although there is no evidence that Jordan Manufacturing could have known the actual storage fee. *Id.* at 3. Jordan Manufacturing admits that it paid storage fees in one other instance, but denies that such fees are customary or any understanding between the parties that it would have to pay storage fees to Brittany, and that Brittany never once requested storage fees until June 2009. *See* DE 27 at 4–5, 9.

Regarding the preparation fees, Brittany did inform Jordan Manufacturing that there would be a charge for any preparation work done if Jordan Manufacturing decided to move its fabric without printing, but that there would be no separate preparation charge if the fabric was printed at Brittany. *See* DE 34 at 9–10. In its response brief, Brittany admits that its employee told Jordan Manufacturing that preparation fees would be charged if Jordan Manufacturing decided to move its fabric without printing but claims that its usual practice was to charge for preparation that had been done whenever Brittany did not print the fabric, regardless of who decided to move the fabric. *Id.* Jordan claims that the preparation was done at Brittany's initiative and for its own convenience, but does not dispute that Jordan consented before any preparation was done. *See id.* at 9; DE 28-3 at 11–12.

## **Analysis**

On summary judgment, the burden is on the moving party to demonstrate that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That means that the Court must construe all facts in the light most favorable to the nonmoving party, making every legitimate

inference and resolving every doubt in its favor. *Kerri v. Bd. Of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). Summary judgment is not a tool to decide legitimately contested issues, and it may not be granted unless no reasonable jury could decide in favor the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Jordan Manufacturing seeks summary judgment on two of its claims: conversion and civil conversion. To prove conversion, Jordan must demonstrate that Brittany has appropriated its personal property "in exercising dominion over it, in exclusion and defiance of the rights of the owner or lawful possessor, or in withholding it from his possession under a claim and title inconsistent with the owner's." *Schrenker v. State*, 919 N.E.2d 1188, 1194 (Ind. Ct. App. 2010).[2] It must also show that it has "an immediate unqualified right to possession resting on a superior claim of title." *Estate of Verdak v. Butler Univ.*, 856 N.E.2d 126, 136 (Ind. Ct. App. 2006). Civil conversion, which would significantly expand Jordan Manufacturing's potential recovery, requires that it prove that Brittany committed criminal conversion under Indiana law, or "knowingly or intentionally exert[ed] unauthorized control over property of another person." *Id.* at 1193. There is no dispute that the fabric and screens are Jordan Manufacturing's property, or

---

[2] Both parties appear to assume that Indiana law applies to this dispute, despite the fact that the alleged tort, and virtually all the relevant, material events, occurred and are occurring in Massachusetts. *See Klein v. DePuy, Inc.*, 506 F.3d 553, 555 (7th Cir. 2007) ("Indiana presumes that the traditional rule—*lex loci delicti*—governs. . . . If, and only if, that location "beats little connection" to the legal action, the presumption in favor of the location of the tort may be overcome and additional favors may be considered." (citing *Simon v. United States*, 805 N.E.2d 798, 804–05 (Ind. 2004), *certified by* 341 F.3d 193 (3rd Cir. 2003)). But the law of conversion is nigh universal and, having filed its suit less than three months after the alleged conversion, Jordan Manufacturing has little to fear from any statute of limitations. So there is little chance of a conflict and, in any event, neither party has raised the issue and instead both have applied Indiana law without comment. A party that hoped to try a different track at this point would find that "the train had left the station" *Lott v. Levitt*, 556 F.3d 563, 568 (7th Cir. 2009) (holding that failure to raise choice of law issue in response to a motion to dismiss waived the issue).

that Brittany is holding the property in defiance of its owner's wishes. Thus, the conversion claims turn on whether Jordan Manufacturing has an "immediate, unqualified right to possession," which, at least in this case, comes down to the same thing as asking whether Brittany's possession of the goods is unauthorized.

Brittany claims that it is holding the screens and fabric under a lien of one sort or another, and that as a lienor it has "equal, if not superior, possessory rights in the claimed property." *Printables, Inc. v. Brittany Dyeing & Printing Corp.*, 126 B.R. 162, 165 (S.D.N.Y. 1991) (analyzing another lien held in fabric and screens by Brittany). The candidates it proposes are an Indiana statutory warehousemen's lien, *see* Ind. Code § 32-33-14-1, or a statutory "spinner's lien" under Massachusetts law, *see* 255 Mass. Gen. L. § 31A. But because it is neither storing the goods in Indiana, nor "engaged in the business of storing, warehousing, and forwarding goods," Ind. Code § 32-33-14-1(a), Brittany's lien must arise, if at all, under the Massachusetts statute. The Massachusetts spinner's lien statute provides that "a lien on account of work, labor and materials furnished in the spinning, throwing, bleaching, mercerizing, dyeing, printing, finishing, or otherwise processing" certain goods, including synthetic fabrics, "as against goods in the lienor's possession, shall extend to any unpaid balance of account for work, labor and materials furnished in the course of any such process in respect of any other such goods of the same owner whereof the lienor's possession has terminated." 255 Mass. Gen. Stat. § 31A.

Jordan Manufacturing argues that Brittany's storage and handling of the fabric and screens is not "work, labor and materials furnished in the spinning, [etc.]" of the polyester fabric and thus does not qualify for a lien under the plain language of statute.

6

While no cases have specifically considered whether storage and handling qualify as work creating a spinner's lien,[3] they most likely do not: at common law, an artisan's lien (of which the spinner's lien is surely a statutory descendant) is only created where the artisan bailee "who, with the consent of the owner, does work upon or adds materials to chattel." *North End Auto Park v. Petringer Trucking Co.*, 150 N.E.2d 735, 738 (Mass. 1958); *see also Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1287 (7th Cir. 1985) (quoting substantially the same from the Restatement of Security § 61). Thus, it would not encompass services such as the storage and handling of goods unless the lienor also provided services that enhanced the goods. *See, e.g.*, *In re Fairway Records, Inc.*, 6 B.R. 162 (Bkrtcy NY 1980); *but see Mickey's Clan, Inc. v. N.Y. Credit Men's Adjustment Bureau, Inc.*, 452 N.Y.S.2d 555 (1982) (allowing lien for storage and handling in preparation for manufacturing services).[4] Massachusetts has by statute extended some liens to cover storage as well as repair or improvement, *e.g.*, 255 Mass. Gen. L. § 25 (garage keeper's lien includes "storage and care" as well as "repairing"), but it has not done so in the spinner's lien statute.[5]

---

[3] Jordan Manufacturing claims that the Massachusetts Supreme Judicial Court has done just that in *Joy Stevens of Cal. V. Plymouth Finishing Co.*, 245 N.E.2d 236 (Mass. 1969), which held that printing and dyeing company had no lien in property in its possession because it had performed no work on the property since its previous derivative lien was terminated. But that lien was not asserted on account of Plymouth's own storage and handling fees, but rather on account of funds allegedly owed to a third-party converter.

[4] *See also* Restatement of Security § 64:
> Where the additional services do not impose any expense upon the lienor, as for example, where an artisan stores a chattel in his regular place of business, the claim of the lienor cannot be increased. In order for a lienor to add storage charges to his claim, storage for compensation must be a part of his business, or the circumstances must require that he incur expense for storage elsewhere.

[5] *Cf. Mammoet USA, Inc. v. Entergy Nuclear Generation Co.*, 831 N.E.2d 349, 354–55 (Mass. App. Ct. 2005) (holding that a mechanic's lien resulting from labor "in the erection, alteration, repair or removal of a building, structure or other improvement of real property" did not extend to transportation and handling of an already assembled

7

But the Court need not decide the question of whether Brittany's storage and handling created a lien over the property, at least at this juncture. Brittany did provide *some* work that potentially created a spinner's lien when it prepared some of the fabric for printing. Although at common law it might be debatable whether Brittany is entitled to hold more than the materials it improved, depending on whether all the fabric and screens were part of a single contract, *see, e.g.*, *Wallace v. Lechman & Johnson, Inc.*, 732 A.2d 868 (Md. 1999), this appears to be precisely how the spinner's lien statute has extended the common law artisan lien. Under the statute, once a bailor has established a lien it is held "as against goods in the lienor's possession," not merely against the goods upon which have been worked and improved.[6] Therefore, if there is in fact a balance outstanding for the preparation of the fabric, Brittany would be entitled to a lien on any of Jordan Manufacturing's property in its possession, including the screens and unimproved Greige fabric. *See Printables*, 126 B.R. at 165 (finding that Brittany had lien against improved and unimproved fabric, as well as screens, in its possession). And while the discussion above indicates that there may be a question concerning the actual amount of Brittany's lien, Jordan Manufacturing has not paid, or offered to pay, as far as the

---

object).

[6] Read literally, the statute could be taken to mean that a spinner's lien only arises when the worked-upon goods are no longer in the lienor's possession. This would significantly derogate from the common law artisans lien, and perhaps for that reason, the few opinions discussing the statutory spinner's lien have seemed to regard the statutory spinner's lien as embracing and augmenting the common law artisan's lien and have given no indication that the lien would not apply when the improved goods are in the bailor's possession. *See, e.g.*, *Joy Stevens*, 245 N.E.2d 236 (holding that printing and dyeing company had no lien in property *in its possession* because it had performed no work on the plaintiff's property since receiving the property and past amounts due had been settled); *Printables*, 126 B.R. 162 (finding that Brittany had not converted finished printed textiles, textiles prepared for printing, and textile screens because it had a lien under § 31A); *Priority Finishing Corp. v. Hartford Steam Boiler Inspection & Ins. Co.*, 23 Conn. L. Rptr. 155 (Conn. Sup. Ct. 1998) (dyer and finisher had "a lien against goods in its possession for the unpaid balance owed for processing its customer's goods).

Court is aware, the amount Brittany claims due for the preparation of the fabric for printing.

This still leaves the question of whether there is, in fact, an unpaid balance for the storage and handling or the preparation of a portion of the fabric. Jordan Manufacturing argues that it indisputably owes nothing to Brittany. If so, Brittany would have no unpaid balance due from Jordan Manufacturing and consequently no right to a lien. But it seems that there are two debts that might indeed be subject to reasonable dispute. First, whether storage and handling fees are a trade custom, and whether Jordan was or should have been aware of this, are clearly facts in dispute. These disputed facts, however, would only be material if (contrary to the Court's tentative conclusion above) such a service could indeed support a lien.

The second question is whether the evidence conclusively shows that Brittany agreed that it would only charge for preparation if it moved the fabric without printing due to Jordan Manufacturing's fault. While the actual e-mail correspondence between the companies' agents is not before the Court, the relevant deposition transcript indicates that Brittany's sales agent wrote in an e-mail: "The prep charge would only be charged if you decide to move out the fabric. No charge if you print them." *See* DE 28-3 at 7. Jordan Manufacturing argues that this statement—mistakenly phrased or not—constituted a promise that Brittany would not charge it fees unless Jordan Manufacturing itself decided to move prepared fabric rather than print it at Brittany.

This is a close question, and one on which Jordan Manufacturing may well ultimately prevail, but the Court cannot hold it beyond reasonable dispute that the quoted e-mail statement was, or would necessarily have been understood as, a promise not to

charge for fabric preparation if Brittany terminated the relationship and thus precipitated any decision to move the fabric. For one, when the evidence in the record is viewed in the light most favorable to Brittany, it shows that Brittany's decision to terminate its relationship with Jordan Manufacturing was caused not solely by its decision to focus on another line of printing work, but also because Jordan Manufacturing's demand had slowed to a crawl. Brittany had been storing some of the fabric for free for nearly three years, Jordan Manufacturing had not placed a single order in a year and a half, and Brittany had no guarantee that it would ever finish printing the fabric. Thus, a reasonable jury might conclude that Jordan Manufacturing *did* decide not to print its fabric when its 2007 order from Value City Furniture fell through and the fabric sat in Brittany's warehouse untouched for eighteen months. Moreover, if there was indeed a trade custom that a printer was to be paid for any preparatory work for which it was not eventually compensated through commission on a final printed product, a reasonable jury might conclude that the e-mail statement would have been understood as a reference to, rather than a departure from, that custom, and that Jordan Manufacturing would not have been justified in assuming that it would not pay for preparatory work either directly or in the form of a commission for printing work.

      Thus, there are genuine disputes over whether Jordan Manufacturing owes Brittany for the storage, handling, or preparation of its fabric. Those facts, in turn, are material to the question of whether Brittany has a valid lien under the spinner's lien statute against the fabric and screens in its possession. And because such a lien would defeat its claims for conversion and civil conversion, Jordan Manufacturing is not entitled to summary judgment.

**Conclusion**

For the foregoing reasons, Jordan Manufacturing has demonstrated beyond reasonable dispute neither that it had an "immediate unqualified right of possession" nor that Brittany's possession of the fabric and screens was "unauthorized." Accordingly, its motion for summary judgment is DENIED.

SO ORDERED.

ENTERED:    September 30, 2011

                                                 /s/ JON E. DEGUILIO
                                            Judge
                                            United States District Court